937 F.2d 616
 91-2 USTC P 50,363
 Unpublished Disposition
NOTICE: Tenth Circuit Rule 36.3 states that unpublished opinions and orders and judgments have no precedential value and shall not be cited except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel.
Henry B. AMES, Dortha S. Ames, Petitioners-Appellants,
v.
COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.
 No. 91-9000.
 United States Court of Appeals, Tenth Circuit.
 July 8, 1991.
 
 Before STEPHEN H. ANDERSON, TACHA and BRORBY, Circuit Judges.
 ORDER AND JUDGMENT*
 BRORBY, Circuit Judge.
 
 
 1
 After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed.R.App.P. 34(a); 10th Cir.R. 34.1.9. The cause is therefore ordered submitted without oral argument.
 
 
 2
 The tax court denied a claimed interest expense deduction and taxpayers appeal.
 
 
 3
 The facts are fully set forth in the opinion of the tax court[1] and for that reason will not be repeated. A brief and generalized summary of the significant facts reveals taxpayers purchased a time share unit in a vacation home located near a Utah ski resort, which in this case was the right to occupy the vacation home for one day each year.[2] The sales transaction was reduced to writing. The purchase price was $2,775. Taxpayers paid $650 down, which left an unpaid principal balance of $2,125, and agreed to pay $465 per year for ten years. These ten annual payments were to be applied to interest. No further principal or interest payments were required until thirty years from the purchase date when taxpayers could either forfeit their interest in the time share unit or pay approximately $70,000 and become the owners of the time share unit.[3] The sales contract required all payments to be first applied to interest, which for the first fourteen years was 188 per cent per year and for the remaining sixteen years was 47 per cent per year. The debt was nonrecourse.
 
 
 4
 Taxpayers deducted $3,995 for each of the tax years 1980 and 1981. Ames v. Commissioner, No. 1990-87, at 2. This deduction was derived by multiplying $2,125 (the unpaid principal) times 188 per cent (the annual interest rate). The Commissioner determined that taxpayers' method of accounting (the accrual method) did not properly and correctly reflect income and disallowed the deduction. Id. Taxpayers filed suit in tax court. Id.
 
 
 5
 Taxpayers' theory before the tax court was the time share unit was worth the purchase price and it would appreciate, due to predicted inflation, from 12.7 per cent to 23 per cent per year during the life of the contract, thereby making the purchase a sound business investment by rendering the property as valuable as the payoff. Id. at 36. The tax court was not impressed with the testimony of taxpayers' expert witnesses in this regard and rejected their opinions. Id. at 43, 51. The expert witness for the IRS also failed to impress the tax court. Id. at 55. The tax court, using the methodology advocated by one of taxpayers' experts, determined the fair market value of the time share unit at the time of purchase was $791.80 and then decided, given the contract interest rate, the time share unit would never be worth the payoff. Id. at 56-60, 62-64.
 
 
 6
 On appeal, taxpayers argue the tax court committed reversible error by: (1) valuing the time share unit lower than any of the three expert witnesses; (2) wrongfully refusing to allow its expert witness to testify on likely appreciation rates; and (3) finding the nonrecourse debt secured by the time share unit was without economic substance. Taxpayers argue alternatively that the interest deduction was allowable under the rationale of Pleasant Summit Land Corp. v. Commissioner, 863 F.2d 263 (3d Cir.1988), cert. denied, 110 S.Ct. 260 (1989), to the extent that the property could be expected to have value when the nonrecourse debt was due to be paid.
 
 
 7
 * The Internal Revenue Code provides for the deduction of "all interest paid or accrued within the taxable year on indebtedness." 26 U.S.C. Sec. 163(a). The application of this statutory provision is simple when the underlying debt in fact exists. A somewhat different situation exists when the debt is nonrecourse. When the debtor has the choice of abandoning the property that secures the debt rather than make payment, courts have allowed an interest deduction only in those situations where the debtor has an economic incentive to satisfy the obligation. Odend'hal v. Commissioner, 748 F.2d 908, 913 (4th Cir.1984), cert. denied, 471 U.S. 1143 (1985); Estate of Franklin v. Commissioner, 544 F.2d 1045, 1047 (9th Cir.1976). It therefore follows where the amount of a nonrecourse obligation bears no reasonable relationship to the value of the property securing payment of the debt, the debt will not ordinarily be recognized for tax purposes as in such circumstances it is unlikely the obligation will be paid. See, e.g., Odend'hal, 748 F.2d at 912 ("If, as a matter of fact, the fair market value of the property is less than that financed by a nonrecourse loan, the authorities hold that the principal of the nonrecourse loan which exceeds fair market value does not represent a real investment in the property by a taxpayer and he may not include the nonrecourse amount in his basis for depreciation.")
 
 
 8
 In the case before us, the tax court found the time share unit had a fair market value of $791.80 on the date it was purchased, which was far less than the purchase price of $2,775. Ames v. Commissioner, No. 1990-87, at 60. The tax court was not impressed with any of the expert opinions as to this value and consequently accepted one of taxpayers' expert's opinion concerning rental value of the unit and utilized this same expert's methodology to arrive at the valuation. Id. Concerning the time share unit's future value, the tax court reasoned that as the debt is increased yearly by the interest rate (188 per cent per year for the first fourteen years and 47 per cent per year for the final sixteen years), and as taxpayers' experts opined the property would appreciate in value only up to 23 per cent per year, the payoff would always be much larger than the fair market value. Id. at 63-64. The record well supports this conclusion. In short, the tax court concluded it would be highly unlikely that the obligation would ever be paid. The only economic incentive to retain this time share unit was the hoped-for ability to deduct from federal taxes far more interest than would ever be paid.
 
 
 9
 Taxpayers first contend the tax court erred in excluding the conclusion of its expert, Mr. Longstaff, as to the expected appreciation in value of the time share unit. We need not address this contention as Mr. Longstaff's most optimistic scenario was an increase in value due to appreciation of 17.38 per cent per year. Id. at 37. As the interest would increase in multiples of Mr. Longstaff's prediction, it would make no difference had the tax court accepted Mr. Longstaff's conclusions. The result would still be the same--it would cost far more to pay the debt than the property would be worth. We also note the tax court rejected the conclusions after finding Mr. Longstaff was no expert at the time his report was prepared, a fact that finds support in the record. Id. at 34-35.
 
 
 10
 Taxpayers next contend the tax court disregarded the admission of the Commissioner's expert, who testified the inflation rate (and therefore, presumably, the time share's value) would increase 12 per cent per year. Taxpayers' contention in this regard is not persuasive. The trier of fact is not bound to accept an expert opinion as to future value. Here, the tax court utilized the methodology advocated by taxpayers' own expert and commenced the calculation using this same expert's opinion as to the rental value of the time share unit. Again, had the tax court accepted this growth rate, the appreciation would still never approach the increase in debt. The tax court carefully considered the testimony of all the expert witnesses and set forth in detail its reasoning. It was the responsibility of the tax court to determine value from all evidence, and this it did in an objectively reasonable manner.
 
 II
 
 11
 Taxpayers argue they had the right to use the accrual method of accounting. This contention is not correct. The Commissioner determined taxpayers' method of accounting did not properly and accurately reflect income. As the Commissioner has broad discretion in determining whether the accounting method used by a taxpayer clearly reflects income, the tax court committed no error when it determined the Commissioner's decision in this regard was neither unlawful or arbitrary. In the case before us, the cash and accrual methods of accounting do not achieve a substantial identity of results. As the time share unit was never rented, it produced no income. The relevant inquiry is whether the Commissioner abused his discretion. Taxpayers have failed in their burden of persuasion. Taxpayers argue the Commissioner has ignored his own published position set forth in Revenue Ruling 68-643, 1968-2 C.B. 76, which is inapposite. This ruling states, in essence, that taxpayers employing the accrual method of accounting must deduct interest ratably over the period of the loan, irrespective of when paid. In the case before us, it is clear that taxpayers' method of accounting materially distorts income. Taxpayers have not been allowed to utilize the accrual method of accounting for this reason. Under 26 U.S.C. Sec. 446, the Commissioner has exercised his discretion. Given the facts of this case, Commissioner's determination cannot be said to be arbitrary. See, e.g., Ames v. Commissioner, No. 1985-443, 8-10.
 
 
 12
 In Pleasant Summit the Third Circuit held a taxpayer, who has acquired property subject to nonrecourse indebtedness far larger than property's fair market value at the time of acquisition, was entitled to deduction for interest and depreciation attributable to nonrecourse indebtedness to the extent of the collateral's fair market value. 863 F.2d at 276-77. Taxpayers have failed to state in their brief where this contention was raised before the tax court. We are not obligated to search the record. Consistent with our rule that we will not consider an issue for the first time on appeal, we decline to address this contention. 10th Cir.R. 28.2(d).
 
 
 13
 In an appendix to their brief, taxpayers contend the applicability of various Revenue Procedures. Again, taxpayers have failed to cite in their brief where these issues were raised before the tax court and where in the record the tax court decided such issues. Due to this failure, we do not address these issues. Id.
 
 
 14
 Alternatively, we agree with the Commissioner that it is not necessary to reach these issues because of our holding that the indebtedness in this case is not genuine.
 
 
 15
 The judgment of the tax court is AFFIRMED. This case is REMANDED to the tax court for such other and further proceedings as may be necessary. The mandate shall issue forthwith.
 
 
 
 *
 This order and judgment has no precedential value and shall not be cited, or used by any court within the Tenth Circuit, except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel. 10th Cir.R. 36.3
 
 
 [1]
 The tax court first sustained the Commissioner's Motion for Partial Summary Judgment by opinion dated August 22, 1985. See T.C.Memo 1985-443. Taxpayers' case was then consolidated for trial with six similar cases. The tax court decision appealed is reported by Ames v. Commissioner, T.C.Memo 1990-87 (February 26, 1990)
 
 
 [2]
 In order to avoid Utah usury law, sellers required taxpayers to form a partnership, which they did. The partnership then elected to utilize the accrual method of accounting. The partnership then claimed the interest accrued as its interest expense deduction
 
 
 [3]
 The unit purchased was originally a tenancy in common but was subsequently converted to a mere license to occupy the home